Good morning. May it please the court, I am David Sevin, the Plaintiff Appellant's Attorney. This is a case where the clerk of the court sent around a letter inquiring about whether this court had, or asking us to argue about whether this court had appellate jurisdiction over a New York State claim. The answer is yes. The first place that can be found is in 28 U.S.C. section 1291, which simply states that this court has appellate jurisdiction over all final decisions of a district court. An interpretation of that can be found in Colari, K-O-L-A-R-I, v. New York Presbyterian Hospital, 455 F. 3rd, 118, from the Second Circuit, 2006. There, there were 12 claims brought in the district court. Most of them were state claims. There were a few Federal claims. The district court dismissed all of them. The Plaintiff Appellant appealed only three of them, only state court claims. And the Second Circuit took the case and said in one flat statement, I quote, we have jurisdiction under 28 U.S.C. section 1291 for only the state court claims. Now, the Colari court also said some interesting things that I was not aware of before I did the research on this. The Colari court determined that it was an abuse of discretion for the district court to entertain supplemental jurisdiction once the Federal claims had been dismissed. It explained that under 28 U.S.C. section 1291. Sotomayor, that's not this case, though. Excuse me? That's not this case, though, because the final judgment here dismissed both Federal and state claims. Right. But once the Federal claims were out, even though the state claims were dismissed at the same time, it is considered an abuse of discretion to retain jurisdiction once the Federal claims are gone. The state claims should be dismissed without prejudice. The Colari said under U.S.C. section 1367 gives the court supplemental jurisdiction, but under subsection C, the court may decline to exercise supplemental jurisdiction in any of four circumstances. One, if the claim raises a novel or complex issue of state law, if the claim substantially predominates over the claim or claims over which the district court had original jurisdiction. And in this case, there were 14 state claims and only three Federal claims. So your position from all of this is that it was an abuse of discretion to dismiss your state claims with prejudice? Correct. And I did not argue that until now. It is not in my earlier papers, because I didn't come across it until I read Colari. Why didn't you forfeit that argument? Excuse me? Why didn't you forfeit that argument? You didn't brief it. Oh, because I didn't realize it until about two weeks ago when I got the letter. That's right. But it is not fatal. There is a case, Valencia, V-A-L-E-N-C-I-A, X. Rel. Franco v. Lee, 316 F. 3rd, 299, 2nd Circuit, 2003. In that case, the district court dismissed Federal and state claims, no party brief to the issue which I just spoke of. The 2nd Circuit, sua sponte, at oral argument, raised the claim. To quote Valencia, At oral argument, this Court questioned the propriety of the Federal Court's resolution of the unsettled questions in New York law, asking why it was a proper exercise of the district court's discretion when plaintiffs had abandoned their Federal claims in advance of the city's summary judgment motion to exercise supplemental jurisdiction over the remaining state law claims. Here, the Federal Court had jurisdiction over the Federal claim up to the moment, up to and including the moment of entry of judgment. Correct? It had jurisdiction over both the Federal and state claims and adjudicated them. It has supplemental jurisdiction over the state claims. Well, that's a kind of jurisdiction. Excuse me? That's a kind of jurisdiction. But under these cases, if the Federal claims are dismissed, the district court should not exercise that supplemental jurisdiction. Supposing that you're wrong and the judge was right. Just supposing. Do you have other state claims that are remaining in state court? Oh, yes. I thought there were many. Many. Twelve. Or eleven, I think. One is fine. Okay. So, I believe that it was an abuse of discretion for the lower court to entertain supplemental jurisdiction, even though it dismissed certain state claims at the same moment that it dismissed Federal claims. The cases say that once the Federal claims are gone, supplemental jurisdiction should not be maintained. In what the case is called the usual case. This qualifies as the usual case. Unusual cases are things like where there are implications of Federal preemption or whether there are... Let me see. I wrote a few down here. Excuse me. Well, okay. Until I find them. The usual cases are situations where discovery is not preceded, where we are not close to trial, where there are no outstanding issues that would indicate that a Federal court should have jurisdiction or should entertain the claims over a state court. Your time is almost up, but let's turn to the merits. Okay. Turning to the actual merits, the lower court based its decision largely on Galat, which is a very new decision. Let's start one step back. I gather that the principal question, not the only question, the principal question is whether your client was an employee so that the FSLA applies. Is that fair? Correct. And at the prediscovery phase, my argument is that it was premature, even under, to dismiss, even under the Galat factors, several of the factors were pleaded to indicate that my client was an employee and the Galat case, it must be remembered, did not dismiss the claims. Galat case just sent it back down for further briefing. That case, as it were, created a grid of considerations, and having done that, it sent it back for the district court in the first instance to consider the application of those factors to that case. Yes. Okay. And further, Are you saying that the district court ignored the Galat factors? No. I'm saying that it's premature, even though you could say that it's the same posture because of what you just explained, but prediscovery, it was premature. And this also represents a novel issue of New York law, even though many federal cases especially have said that the FLSA and the New York law are construed co-extensively. There are 11 guidelines, as opposed to the Galat case, which laid out seven, I believe. There are 11 points that the New York State Department of Labor has issued to determine specifically in internship situations whether the intern was an employee or not. And every one of those has to be met. And there has been, In order for the person, The FLSA? It applies to New York labor law. But not to the FLSA? Not to the FLSA. It's New York State Department of Labor guidance. And in New York State, the courts are deferred greatly to the agency which is charged with administering the law. So your client could be an employee for state law purposes, but not federal law purposes? Right. And this is a state law claim. And there has been no state law case post-Galat to determine if the New York labor law standard will apply or if a Galat standard will apply. So it's a novel issue. It's an unsettled issue of New York law, which would be better determined by a New York court. Thank you. You've reserved rebuttal. We'll hear you then. Thank you. Good morning. If it pleases the court, my name is Matthew Grow, like Grow Up, which I'll never do. And I represent the Bayview defendants, that's South Point Nursing Home and Joseph Benton, the administrator of the nursing home. Regarding whether or not this court has the power to hear this appeal, I refer back to the United Mine Workers v. Gibbs case. I have a labor background, so I like labor cases. And the two-part test there is whether or not there is power to hear the state court claim or, in this case, the appeal. And I believe that the federal court has the power to hear this claim both below and here because the state and federal claims are derived from a common nucleus of operative fact and that the plaintiff would ordinarily be expected to try both claims in one form. So there is discretion, there is power to hear the case, as there was at the lower court. And on the second test, this court, as well as the lower court, has power to exercise a pendant jurisdiction because there are considerations of judicial economy and convenience and fairness to the litigants, which supports. It's nice that we have power. Now let's turn to the merits. What do you say to your adversary's argument that the Glatt factors, which has been the focus, I think, of virtually all the papers, don't control this because there's a New York labor law standard which is different? That is not true. The district court judge correctly held that the FLSA and the New York labor law claims are subject to the same standard because the definitions of employee under both statutes are nearly identical. And so. They may be nearly identical, but they're completely unhelpful. I'm sorry, I didn't hear that. It may be identical, but they're quite unhelpful because it just says an employee is somebody who's working for an employer. Well, that's correct. And that's why we go into the Glatt factors to determine whether or not this person was an employee or not. Your adversary said there are also a list of factors in the New York law and they're different. Is that not so? They were cited pre-Glatt in older cases. But now that Glatt is the law within this circuit, and I would argue that the. That was pre-Glatt. Yeah. All the other cases involving state law standards published by the New York State Department of Labor are pre-Glatt. Yes, sir. So under, since Glatt, um, that is the rule of law for both the state and the federal claims. Um, the state court. Well, does, uh, does, um, New York state understand Glatt to, um, um, overrule or, or supersede, um, its definitions? I do not believe honestly that there is a decision addressing that to this point, but I, I, uh, the plaintiff chose to form. I mean, we, we can say that, um, to the extent we see both types of cases, the standard is the same, but I'm not, um, explain to me how we could bind a New York state court with that approach. Well, maybe we should, uh, refer the issue to the court, uh, the New York state court of appeals for a decision because, um, that,  uh, point of view, and I do respect that. The, um, plaintiff, however, chose to form, he chose the federal court, he chose to bring supplemental claims under 1367, and he has now, is now backpedaling because he has a decision against him under both the Fair Labor Standards Act and the New York labor law. And in the interest of the judicial economy and all of the other, um, basis for not requiring my client to try the same issues or to deal with the same issues in state court, after having had to brief not only this issue, but the dismissal of 16 other causes of action, only to have to rebrief those in state court now is abusive and, and it's outrageous. The plaintiff chose to form, he gets the results of that form. I argue that there is race judicata and collateral stopper effect. If you were to try to bring this claim in state court, and I'm glad to make those arguments, but I will ask for sanctions and attorney's fees in connection with any such inappropriate course of action. This has been going on. Let's not get ahead of ourselves. Um, has your adversary argued that the standard is different with respect to the New York labor law? Not to this point. I mean, not until this day when you're both here. Yes. It's not in his papers. He has, it's not a proper issue on appeal. Read the issue that he put in his brief. That is the issue. Well, let's turn to the merits. Uh, the, um, the complaint says that, uh, Ms. Sandler was basically doing the work of employees of this, uh, of this nursing home. I understand. Yeah. Now that would be a displacement argument. That's a consideration under glad. It's an important one. Wouldn't you say? Oh, it's because once you have to look at what is the, um, uh, who is the primary beneficiary, uh, then if somebody arrives and is, is just substituting for the people that your client would usually employ, um, how does that person get, uh, why is that person treated as, as an intern? Well, taking that fact is true. There are seven glad factors. That is one factor. And Judge, um, Fewerstein correctly held that a weighing and a balancing of all the factors unequivocally just demonstrates that this was a bona fide internship in which she received educational vocational benefits and, uh, in a real world setting. And the work which she did, if at all, you know, if any was outweighed by any benefits that she received. And the district court correctly held that the undisputed purpose of the internship was to fulfill an academic requirement for her master's of social work degree. And so the economic realities tilted overwhelmingly in the favor of non-employee status. Thank you. We'll hear from the university. Good morning. My name is Catherine Murphy. I'm the in-house associate counsel for Long Island University. We have campuses in Brookville and in Brooklyn. Uh, one thing I'd like to point out is the, uh, Pellea. She was in a registered degree program for Long Island University. So this is not a case where, uh, she was not a student intern. She was registered, uh, um, excuse me. I'm sorry. I was a little nervous. Uh, now I'm not nervous anymore. No, thank you. Um, uh, Ms. Sandler, um, uh, the appellee, uh, was, uh, registered as a student at LIU and she's not an intern. And so I just wanted to, that, that's been lost in the shuffle here. Um, she wasn't an intern who was displacing other employees. She was a student who was registered in a practicum course in field, in the field. And this was a required course. I know the district court, uh, pointed that out because that was alleged, uh, in the complaint. Uh, so I just wanted to make sure the court was aware that this was not an internship situation. This is a registered, this was a student, um, who was required to complete those hours. How does that difference affect our, uh, analysis? Uh, I believe, uh, that difference is very important because in the companion case, in the Wang case, um, the court took great pains to go through each and every, uh, plaintiff in that case and how their internship, uh, focused on a bona fide educational purpose. So I do believe that's, that's, uh, a distinction here, uh, that's been lost, uh, in translation. But may I first address the, the question of, uh, jurisdiction? Okay. Thank you very much. Um, I would like to, uh, ask the clerk of the court's question, uh, in the affirmative. The question is, can the court of appeals here, the appeal, in as much as it is based solely on a claim over which the district court had no independent jurisdiction? I answer in the affirmative and I rely principally on three cases. Uh, the recent Cohen versus Postal Holdings, uh, case from this court. I rely also on the Ben case and, uh, Lundy, uh, is controlling. In, uh, this summer, the, or actually not even this summer, um, on October 12th, uh, this, uh, court ruled in the Chad Cohen v. Postal Holdings case, um, that the default rule is that federal courts should not decide related state court claims unless there is good reason for doing so. And I point out, um, Your Honors, um, that the good reason here to do so is that GLAT established that in such cases that involve overtime wages, that courts analyze the state and the federal standard in the very same way. And this leads me to Ben, the Ben, uh, case, which I believe this is a case that, uh, Judge Sack presided on. This was Dalton Ben versus the City of New York. And the court ruled in that case that Ben's state law claims are analytically identical to his federal claims. Um, the problem in Ben, as in here, is that, uh, um, Mr. Zevin has abandoned his claim. He didn't raise any of these claims, uh, in his appeal. Admittedly, he admitted, uh, that today. Um, so in Ben though, which is instructive, is that Ben did not argue on this appeal that summary judgment should have been denied because the defendant failed to show that they were entitled to summary judgment using a applicable, uh, to the federal law claims. Here, the standard is the same. The GLAT construct treats interns and looks at them in the same way as the New York labor law claim. Uh, Lundy is instructive because, uh, Lundy had both state claims, uh, which raised novel issues. And, uh, Lundy also had a very similar claim, um, under GLAT, which was analyzed under the New York law and the standard. That is applied to federal law. So, in Lundy, they had two claims. They had claims that were distinguished because they did raise novel issues. And in the court, in Lundy, uh, remanded those. Well, GLAT makes perfect sense when you have both claims on appeal. But let's just say you had, uh, a state law claim on appeal. And, hypothetically, there was a New York State Court of Appeals decision uh, that, um, inserted factors that were different from GLAT or different from what we used in the, uh, in adjudicating a federal claim. What, what, what should we do in that circumstance? Okay. Well, I think that, uh, Wang, the companion case. I mean, can we, uh, substitute our judgment for the New York Court of Appeals? Well, that's, that's not what the, the facts bear out in this case. These are, these are what we're looking for. The hypothetical. These are hypothetical. Okay. Yes. Thank you. Um, thank you, uh, Your Honor. Well, I would say when two claims are identically, or analytically identical as they were in Ben, uh, then that this court, um, should decide that the district court properly invoked and retained, uh, supplemental jurisdiction over the New York labor, uh, law claim, even after it was, they, they dismissed the Fair Labor Standards Act claim because both the federal and state wages claims are identically analytically equivalent claims. And the GLAT, um, specifically ruled that New York labor law and Fair Labor Standards Act claims are analytically equivalent. I just have one. Do we use GLAT or do we have to anticipate how the New York Court of Appeals would have interpreted the New York state statute? Well, I don't think we have to, uh, be concerned with that because here, this case, and I'm reading from the GLAT decision, um, the amended decision, uh, that, uh, Judge Jacobs, uh, presided under, um, there are three salient features, um, to a GLAT analysis. And the third, which was added in the amended decision, it wasn't in the first GLAT, but it was in GLAT two, says specifically, um, this is the third, um, salient feature. Third, it acknowledges that the intern-employer relationship should not be analyzed in the same manner as the standard employer-employee relationship because the intern enters into the relationship with the expectation of receiving educational or vocational benefits that are not necessarily expected with all forms of employment. So, regardless of whether you're looking at the New York Labor Law or the Fair Labor Standards Act, this is an employment, this is not an employment situation. This is a student who entered into a course with the expectation of learning something. Whether she belittles or bemoans what she actually, the takeaway at this internship site is of no moment because I know my, oh, I actually have more time than I thought, um, because I wanted to point out in, oh, is this, I'm running over, okay, so then let me end this way, let me end because I thought I had two minutes left, I'm so sorry. Uh, but in Wang, the companion case which I talked about earlier, the companion case to Glatt, specifically says this, um, while the internships involved varying amounts of rote work and could have been more ideally structured to maximize their educational potential, which I believe the plaintiff has argued all along that she didn't get much out of it, um, given the totality of the undisputed evidence, no reasonable juror could conclude that the plaintiffs were employees under governing law. The court therefore concludes that under the Fair Labor Standards Act and New York law, plaintiffs were interns rather than employees as, as a matter of law. Start out by saying this is not an intern case. Well, because mine is even more unique. Um, we're talking about in Wang these were all, um, uh, students who were working for Hearst, uh, news, uh, periodicals and magazines. Um, they were, some were, uh, um, a letter that they were going to get two or three credits. This is intern plus. This is what Glatt envisioned, a bona fide educational program. These are students who were enrolled in a degree program. Unlike Glatt and Footman, they were not enrolled in, uh, degree programs and that's probably why their case was remanded back to the district court to apply the proper standards to see if there was an educational component. So there was no question here. Thank you. Thank you. Just a couple small points. Um, you asked Mr. Groh whether I had argued that the New York State labor law is different from federal law any place and he said no but I have. Um, in papers submitted just Monday though so he probably hasn't read them yet. Um, but there, there's a fairly lengthy section on exactly what I just described to you. Section of what? Of, in the New York State. Oh, I'll explain. What did you, you said, you, you gave us something. What did you give us? Right, I forgot. It wasn't you. In the New York State case where the, the eleven causes of action. Don't look at me. Don't look at me. Oh, right. So, you don't have these papers but the defense has made motions to dismiss and I opposed them just on Monday. Is this the state court? State court, yeah. New York State Court. All the claims have been refiled. All the state claims that were dismissed without prejudice have been refiled in New York State Court. Thank you. You're welcome. Do you have anything else? Yeah. Um, okay. I, I actually we're, we're talking about in GLOT the internship um, requirements have been revised differently and I just wanted to point out that the New York State eleven point uh, labor law guidelines specifically are wage requirements for interns in pro business in for-profit businesses. Um, I've got the uh, guidelines here. Would the court like to examine them, take judicial notice? You could, you could send them in the 28J letter although I don't know whether that's new. Okay. Um, I will look that up. Um, and the other main point is that the lower court focused on what the internship promised not on what the internship delivered and Ella, you argued that. Some, some of these things are class actions. Are you saying you have to look individually at what each, the experience of each individual person and the subjective feeling of each individual uh, person as to whether they got anything out of the experience? Not a subjective feeling but the Glock court did call it a fact specific inquiry and the employment status in general is considered a fact specific inquiry. So there is a fair amount of, of specific uh, looking into the, the, the actual particular situation that is involved in any of these cases. Or should we instead really be focused on the program itself which in this instance is a master's degree in social work at, uh, at a university which for its accreditation of that degree must place uh, its, its students, its graduate students into internships? I believe you should focus on what exactly occurred. Not on the purpose of the internship program or the size of the program but on what the student actually received. Was there an educational benefit? Was that an internship with a school? Is it automatically considered a valid internship with no employment?      all. We'll, reserve decision. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.